Garland M. **FITZPATRICK**, Saul Stein, William Slocum, Thomas H. Elliot, Donald Mathews & Mortimer Covert

v.

J. Frederick **BITZER**, Chairman of the State Employees' Retirement Commission, Robert I. Berdon, Treasurer of the State of Connecticut, and Nathan G. Agostinelli, Comptroller of the State of Connecticut.

**Civ. No. 15492.**

United States District Court, D. Connecticut.

July 12, 1978.

---

Paul W. Orth, Hoppin, Carey & Powell, Hartford, Conn., for plaintiffs.

Sidney D. Giber, Asst. Atty. Gen. of Conn., Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendants.

### SUPPLEMENTAL RULING ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

CLARIE, Chief Judge.

The plaintiffs have requested the Court to reconsider and clarify its ruling filed December 21, 1976, wherein the Court granted a total overall allowance of $41,145 for attorneys' fees to plaintiffs' counsel pursuant to the provisions of 42 U.S.C. § 2000e–5(k), known as the Equal Employment Opportunity Act. The plaintiffs' counsel in his present motion has suggested that in light of the successful result of the suit, the Court should apply to the hourly allowance a "multiplier" for an overall award of $100,000 attorneys' fees.

### Litigation History

This action was initiated in 1974 by a group of active and retired male employees of the State of Connecticut, who claimed that the State's employee retirement plan contravened Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Court found that the retirement plan did discriminate against male employees on account of their sex, and entered judgment for the plaintiffs with prospective injunctive relief against the defendant State officials. *See Fitzpatrick v. Bitzer,* 390 F.Supp. 278 (D.Conn.1974). However, relying on *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court ruled that the plaintiffs' request for retroactive retirement benefits and a reasonable attorney's fee was precluded by the Eleventh Amendment.

On plaintiffs' appeal, the Circuit Court of Appeals agreed with the ruling that the award of retroactive benefits would violate the principles announced in *Edelman,* and affirmed the lower court in this respect, but held that attorneys' fees were allowable, since their effect on the State treasury would be merely "ancillary." *Fitzpatrick v. Bitzer,* 519 F.2d 559 (2d Cir. 1975). On certiorari the Supreme Court reversed, holding that both the retroactive benefits and the attorney's fee were recoverable against the State in spite of the strictures of the Eleventh Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Court resolved the apparent conflict with *Edelman* by reasoning that, since the Fourteenth Amendment postdated the Eleventh, Congress has the power to permit a violation of the Eleventh Amendment when it is acting pursuant to its authority under § 5 of the Fourteenth Amendment.

When the case was remanded by the Circuit Court for computation of an attorney's fee, the District Court found the plaintiffs' original petition requesting an allowance of $6,275 for attorneys' fees and costs at the District Court level to be fair and reasonable. This award was based on hourly rates, proposed by plaintiffs' counsel himself, of

$50 per hour for 83.5 hours of a partner's time and $30 per hour for 52.6 hours of associates' time. Additionally the plaintiffs' attorney was awarded $34,870 for his overall services in the Court of Appeals and the United States Supreme Court. This represented 320.8 partner hours at $75 per hour and 216.2 associate hours at $50 per hour. See Ruling on Plaintiffs' Motion for Attorneys' Fees (Civil No. 15,492, December 21, 1976). The total award of $41,145 has already been paid by the State of Connecticut.

## Statement of Facts

The plaintiffs now ask that this Court make more explicit its ruling on attorneys' fees, including the basic hourly rates and all other factors considered by the Court in arriving at the overall fee. They specifically request the Court to explain the intended meaning of its original December 21, 1976 memorandum, wherein it used the phrase, "Considering the totality of the facts . . . the reasonable value of the appellate professional charges for services should be computed at the rate of $75 per hour for the partner and $50 per hour for the associate."

The plaintiffs represent that such a clarification of the Court's reasoning would materially assist counsel in deciding whether or not to appeal the Court's award of counsel fees; and if an appeal should follow, it would help to limit the issues on appeal, as well as shed more light upon them. The plaintiffs also request that the Court specifically state, whether or not it gave any consideration to the contingency fee aspect of the litigation; and whether or not that factor would not warrant the Court's awarding an increased amount of counsel fees.

The plaintiffs' attorneys' services in the Circuit Court of Appeals, if computed under the originally billed rate set by plaintiffs' counsel of $50 per hour for 58.7 hours, would have amounted to $2,935 for partner's time; and 52.6 hours of the associates' time, at $30 per hour, would have totaled $1,578. Thus at that stage of the proceed-

ings, the total overall earned legal fee, both for the District and Circuit Courts, as determined by the professional fee rate standards established by plaintiffs' own counsel, would have amounted to a total of $10,788.

The affidavit of counsel concerning the Supreme Court appellate proceedings discloses a claim for 238.1 hours of partner's time which, if computed at the $50 per hour rate, totals $11,905; together with 173.6 hours of associates' time at $30 per hour for a total of $5,208; thus the total professional fees for counsel at the Supreme Court level, under plaintiffs' original fee schedule, would have been $17,113. Accordingly, if the legal fees had been computed at the same hourly rate established by plaintiffs' counsel himself on September 16, 1974, the overall allowance for counsel fees at all levels would have been $27,901.

Plaintiffs' counsel now asks the Court to recognize that sometime in 1975, the overhead expenses in the law office with which he is associated increased substantially; and that his minimum hourly charges became at least $60 per hour for the services of the firm's partners and $35–$40 per hour for the associates. Since the appellate work in this case in the Second Circuit was concluded at the latest on the day of the argument, March 10, 1975, and the paper work and research presumably was completed by December 20, 1974, when the Clerk of the Court of Appeals certified the index to the record on appeal, one could reasonably conclude that any increase in professional charges would not likely have commenced until after the time of the petitioner's petition for certiorari before the Supreme Court in 1975.

Thus if the appellate aspects of the case in the Supreme Court are to be computed under the proposed revised fee schedule of $60 per partner hour and $40 per associate hour, there is a total fee for work at the Supreme Court level of $21,230. When added to the District Court and Circuit Court fees of $10,788, this sum makes an overall total fee of $32,018. This is substantially less than the more generous fee and costs of $41,145 already allowed by the Court.

In the plaintiffs' supplemental fee application, supported by successive affidavits, filed July 12, 1974, January 6, 1977, and June 21, 1978, counsel indicates that the suit was sponsored by the Connecticut State Employees' Association, which agreed to pay out-of-pocket expenses and by the Connecticut Civil Liberties Union ("CCLU"), which agreed to supply cooperating counsel, who would work without any fee. Attorney Orth, the cooperating counsel, was subsequently encouraged by the CCLU to seek a fee, inasmuch as the law provided for it, and it was agreed that the apportionment of the fee, should the Court award one, would be resolved on an *ad hoc* basis.

Counsel expressed the opinion that the CCLU would at least permit him to keep an amount, which might reasonably represent the overhead expense of his firm for the professional time allotted. At that time the overhead expense was calculated to be $18 to $20 per hour of partner's time. Pursuant to this arrangement, $3,313 of the $6,275 originally awarded as fees and costs for the District Court portion of the case was paid over to the CCLU. The remaining $2,962, which was retained by plaintiffs' counsel, represented the firm's overhead expense. The fact that counsel received only an amount covering his overhead resulted from his own voluntary arrangement with the CCLU.

Plaintiffs' counsel suggests that his professional efforts in persuading the Supreme Court to adopt the novel position, that notwithstanding the specific prohibitions of the Eleventh Amendment, Congress has plenary power to set aside the State's immunity from retroactive monetary relief in order to enforce the Fourteenth Amendment, should be recognized by a more generous attorneys' fee. He argues that the Court should recognize his skill, ingenuity and pioneering effort by granting some multiplier of his already non-minimal hourly rates to his normal fee; and that a substantial sum should be added, as an incentive or bonus, or that a Supreme Court appearance award should be engrafted onto the award. Finally, he asserts that Hartford fees are small in comparison to those of New York City or Washington, D.C. rates, and the significance of this case justifies the granting of major metropolitan area litigation fees.

Plaintiffs' counsel points out that after the District Court decision, the CCLU, who up to that time had been co-sponsor with the Connecticut State Employees Association of the original litigation, had no further involvement in the case and that he was from that time on acting as private counsel for the Connecticut State Employees Association and its members.

### Discussion of the Law

To encourage compliance with the civil rights law, Congress has authorized the recovery of a reasonable attorney's fee by plaintiffs, who by private action under such statutes, act as private attorneys general in enforcing federal policy. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) provides:

> "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States should be liable for costs the same as a private person."

■ The Court notes at the outset, that the fact that this suit was initiated by the CCLU is not material.[1] Attorneys' fees may be awarded in civil rights cases regardless of whether the client is charged a fee by the attorney. *Torres v. Sachs*, 538 F.2d

---

1. It cannot be assumed, merely from the participation of the CCLU, that the plaintiffs are indigent. No statistics regarding the number of dues paying members of the plaintiff association are available for the time prior to April 5, 1977. However, since that date, the effective date of the state statute giving state employees the right to collective bargaining, Conn.Gen. Stat. § 5–270 *et seq.*, the number of employees in the plaintiff association have swelled so that there now are 25,089 active members and 5,638 non-active members, who each pay $52 per year in dues; additionally 5,400 retired members are assessed $9 annually. Thus the association's annual income at present totals $1,646,404.

10, 13 (2d Cir. 1976); *Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir. 1974); *Jordan v. Fusari*, 496 F.2d 646, 649 (2d Cir. 1974).

While plaintiffs' counsel represents that his office time records do not differentiate between time spent on the Fourteenth Amendment Equal Protection problems and Title VII issues, this circumstance has no material bearing upon the ultimate issues now before the Court. The policy regarding attorneys' fees in civil rights matters has recently been broadened by the Congress in 42 U.S.C. § 1988, which has encompassed by general reference 42 U.S.C. § 2000d *et seq.* The Second Circuit in a very recent § 1988 case entitled *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 decided June 15, 1978, expressed its philosophy regarding the private attorneys general theory, when it said at page 37:

> ". . . the legislative history of § 1988 [an analogous statute] indicates the concern of Congress that attorneys who are acting as private attorneys general receive reasonable compensation for their services. 'The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven. In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws.' "

In another § 1988 case, the Second Circuit enumerated the factors to be considered when computing the attorney's fee to be awarded in a civil rights case:

> ". . . complexity or risk of loss on the legal issues and benefit to the clients, are important considerations in any award of attorneys' fees above an hourly rate. *See City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 470; *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir.), *cert. denied*, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973); *Blank v. Talley Industries, Inc.*, 390 F.Supp. 1, 6 (S.D.N.Y.1975); *Pealo v. Farmers Home Administration*, 412

F.Supp. 561, 567 (D.D.C.1976). Since neither factor argues in favor of an extra award here, we must heed our own admonition to scrutinize attorneys' fee applications with an 'eye to moderation' seeking to avoid either the reality or the appearance of awarding 'windfall fees.' *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 469, 470. We reduce the award by $50,710 and otherwise affirm it." *Beazer v. New York City Transit Authority*, 558 F.2d 97, 100–101 (2d Cir. 1977).

Similarly, in a recent case in this District, *Firebird Soc. v. Members of Bd. of Fire Commissioners*, 443 F.Supp. 752 (D.Conn. 1976), *aff'd* 556 F.2d 642 (2d Cir. 1977), the Court indicated that when evaluating a request for attorneys' fees for successful plaintiffs in civil rights cases, the factors to be weighed include the time and labor spent, counsels' experience and reputation, the magnitude and complexity of the litigation, the amount recovered, the attorneys' "risks of litigation," and awards in similar cases. In that case plaintiffs' counsel sought $250,000 and was awarded approximately $15,000. It is instructive to note that that case involved fees for services of Connecticut attorneys which were rendered at approximately the same time as the services in this case, and the court's award of fees, based on an hourly rate of from $25 to $50 per hour, was affirmed by the Second Circuit.

Applying the foregoing principles to the instant case, the Court notes that the case was submitted to the trial court by stipulation of facts and on the briefs; there was no evidentiary trial. The legal issues were few and not unduly complex. The original ruling in this attorneys' fee allowance was filed December 21, 1976 and upon receipt of the plaintiffs' motion to reconsider filed January 5, 1977, a hearing was scheduled on February 7, 1977.

At that time the plaintiffs offered the testimony of an expert witness, who testified to the average flat hourly rate for comparable services at the time material to this case. He testified that the hourly rate of his firm for similar services would have

been $75 per hour for a partner and $50 per hour for an associate with experience equivalent to that of the plaintiffs' associate. (Hearing Tr. 5, Feb. 7, 1977). He stated further that if a favorable result on behalf of a client were achieved in a complex legal matter, such as this one, his firm would increase the flat hourly rate by a 15% add-on in arriving at the net fee, if the client was a major corporation whose ability to pay was not in doubt. (Hearing Tr. 6, 12, Feb. 7, 1977). He also represented that the flat hourly rate would not vary for professional services in the District Court, the Court of Appeals or the United States Supreme Court. (Hearing Tr. 9, Feb. 7, 1977).

If the case was taken on a contingent basis, the expert testified, the amount of the fee would depend on the amount of monetary damages recovered, and the hourly rate would have no relevance. However, he stated that where a court has awarded damages, plus attorneys' fees as an add-on, that is not a contingent fee. (Hearing Tr. 9, Feb. 7, 1977). The witness agreed that a contingent fee would not be the usual arrangement in this type of case. (Hearing Tr. 11, Feb. 7, 1977).

To determine whether the result achieved in the Supreme Court justified an increment in the plaintiffs' attorney's fee, this Court requested that the State file an affidavit containing the financial data with respect to the immediate cost to the State of Connecticut for compliance with the District Court's order of prospective relief, and the future cost for the overall funding period; and in addition, a separate cost estimate covering the Supreme Court's order which mandated the award of retroactive benefits covering the period from March 24, 1972 to September 16, 1974.

After considerable time and actuarial effort, the Chief of the State Retirement Division filed the requested affidavit with the Court on March 29, 1978. It states that for the fiscal year 1975–76, the adjustment shall require a State appropriation of additional funds amounting to $9,694,900. This sum represents the estimated cost of the immediate relief afforded by the District Court decision. For the overall funding period contemplated by the actuarial estimate of 40 years, the relief awarded by the District Court would require an overall expenditure of $394,703,600 of State funds. The Supreme Court's award of retroactive benefits caused an immediate expenditure of an additional $1,273,739.25, but had no effect on future payments with the exception of minor reductions due to early retirement taken by some members of the plaintiff association.

From the foregoing it is apparent that, measured by the amount of "dollar benefits" obtained for the plaintiffs as a class, the far greater amount of money was directly attributable to the original District Court decision. Thus, it is apparent that, in terms of the results achieved on the appeal to the Supreme Court, there is no reason to award any bonus, over and above the attorney's normal hourly rate, for the attorney's services in the Supreme Court.

Nevertheless, the Court in calculating the attorneys' fees awarded in the December 21, 1976 ruling, permitted a substantial increase over the hourly rates, established by plaintiffs' counsel himself, for his services at the District Court level. For services in the Circuit Court as well as in the Supreme Court, this Court increased the partner's rate of $50 per hour by 50% to $75 per hour and the $30 per hour associate's rate by 66⅔% to $50 per hour. It might be noted that a private client would undoubtedly protest vehemently, if his attorney were to suggest such an increase after the commencement of suit, but prior to its conclusion. However, considering the inflationary pressures which increased the attorney's overhead and in light of the expert's testimony concerning the usual hourly rates for Hartford attorneys, the Court found such an increase to be fair and reasonable in this case.

Additionally the Court, having considered the testimony of the expert witness that his firm, one of Hartford's most respected, customarily added on 15% to the overall hourly rates where a favorable result was obtained in a case such as this one, is now of the opinion that such an increment would be reasonable here and in keeping with the prevailing rates in the Hartford area.

Therefore, the Court, using the initial award of $41,145, less expenses of $522 and using the 15% factor as applied to the net figure of $40,623 for time spent, adds the sum of $6,093.45 to the original judgment for counsel fees, which yields a total of $47,238.45.

The plaintiffs' attorney argues that the Court should, in addition to the granting of the increase in the hourly rates and the 15% add-on, multiply this sum by a factor of more than two, to reach a final figure of $100,000 in attorneys' fees. The rationale is that such a multiplier would encourage other attorneys to take these civil rights cases, thereby insuring the private enforcement of the civil rights statutes. This Court is of the opinion that the 15% add-on is sufficient to encourage attorneys to enforce the civil rights acts.

While not wishing to denigrate the professional ability of plaintiffs' counsel in the handling of this case, it is the duty of this Court to resist succumbing to the natural tendency of "vicarious generosity" in awarding attorneys' fees out of State funds. *Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp.*, 194 F.2d 846, 859 (8th Cir. 1952).

Accordingly, the total judgment for such fee allowance shall be amended to read $47,238.45. SO ORDERED.