Virginia GAGNE, Individually and on behalf of all others similarly situated

v.

Edward MAHER, Commissioner of Social Services.

Civ. No. H–75–1.

United States District Court, D. Connecticut.

Aug. 1, 1978.

Joan E. Pilver, David C. Shaw, Legal Aid Society of Hartford County, Hartford, Conn., for plaintiff.

Paul M. Shapiro, Edmund C. Walsh, Asst. Attys. Gen., State of Connecticut, Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendant.

### RULING ON MOTION FOR ATTORNEYS' FEES

CLARIE, Chief Judge.

The plaintiff, having entered into a stipulated judgment with the defendant Commissioner of the Connecticut Department of Social Services, now seeks an award of attorneys' fees under the provisions of 42 U.S.C. § 1988. The defendant opposes such an award on the following grounds: (1) that the Eleventh Amendment bars an award of attorneys' fees which will be paid

out of the State treasury; (2) that the plaintiff is not entitled to an attorney's fee, since the case was terminated by consent decree rather than by a formal order of court; and (3) that 42 U.S.C. § 1988 does not permit an award of attorneys' fees where the defect in the state law is an inconsistency with a federal *statute,* rather than with the federal *Constitution.* The Court rejects each of these arguments, and holds that the plaintiffs' attorneys are entitled to a fee award.

The Court finds $45 to be a reasonable hourly rate. This rate, applied to the total of 95⅓ allowable hours worked by the plaintiff's attorneys, would yield a total fee of $4,303.13. However, the Court has decided to reduce this figure by 30%, in recognition of the fact that 30% of the budget of the plaintiff's attorneys' legal aid office is federal money distributed by the Connecticut Department of Social Services. Consequently, the Court finds to be fair and reasonable a total attorney's fee of $3,012.19.

### Factual Background

The plaintiff Virginia Gagne instituted this § 1983 class action with a complaint filed on January 3, 1975, wherein she alleged that the Connecticut Department of Social Services (hereinafter "the defendant") was calculating welfare benefits for working AFDC recipients in a manner which was contrary to federal statutory and constitutional law. Specifically, the complaint alleged: (1) that contrary to 42 U.S.C. § 602(a)(7) and 45 C.F.R. § 233.-20(a)(iv)(3), was including certain work-related expenses when it calculated the amount of money available to a welfare recipient; (2) that the defendant denied procedural due process to working AFDC recipients by failing to adopt procedures

reasonably calculated to inform them as to whether their claims for work-related expenses were being denied or granted and by failing to inform them of their right to challenge adverse determinations in an evidentiary hearing; and (3) that the defendant's maintenance of standard work expense allowances were so arbitrary and unreasonable as to deprive working AFDC recipients of substantive due process.

After discovery and negotiations the parties entered into a consent decree, which was approved by the Court on March 2, 1977. The consent decree gave the plaintiff, as well as the class she represented, virtually all the relief sought in the complaint. Under the terms of the consent decree the defendant agreed to: permit working AFDC recipients to prove that they incur work-related expenses which are in excess of the standard allowance established by the defendant; conduct an annual review for the purpose of updating the standard allowances; publish heretofore unpublished standard allowances; double the standard transportation allowance from $.06 to $.12 per mile; provide written notice to working AFDC recipients of the precise amount of work-related expenses which are to be allowed as to each recipient; provide written notice of the AFDC recipients' right to an evidentiary hearing in the event that the recipient disagrees with the defendant's calculation of work-related expenses; and stay any reduction in AFDC benefits if the recipient requests an evidentiary hearing within ten days of receiving the aforesaid written notice.

### Discussion of the Law

The Civil Rights Attorney's Fees Awards Act of 1976 [1] is applicable to cases, such as the present one, which were pending on the effective date of the Act. *Beaz-*

---

1. That statute, which has been codified in 42 U.S.C. § 1988 reads:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a

provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

As amended Pub.L. 94–559, § 2, Oct. 19, 1976, 90 Stat. 2641."

*er v. New York City Transit Authority,* 558 F.2d 97, 100 (2d Cir. 1977). The defendant argues that the Eleventh Amendment bars any award of an attorney's fee, which will be paid out of the State treasury. This argument is foreclosed by the recent holding of the Supreme Court that the Civil Rights Attorney's Fees Awards Act of 1976 may be utilized to obtain an attorney's fee award against a State, notwithstanding the strictures of the Eleventh Amendment. *Hutto v. Finney,* —— U.S. ——, 98 S.Ct. 2565, 57 L.Ed.2d 522 at pp. 13–18 (1978). The rationale of that case was that the attorney's fee award has only an "ancillary" effect on the State treasury, and therefore the award does not offend the Eleventh Amendment. Moreover, Congress may abrogate the States' Eleventh Amendment immunity when it is acting pursuant to § 5 of the Fourteenth Amendment, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and it is clear from the legislative history that the Civil Rights Attorney's Fees Awards Act of 1976 was enacted pursuant to § 5 of the Fourteenth Amendment. *See* S.Rep.No.94–1011, p. 5 (1976); H.R.Rep.No.94–1558, p. 7 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908. Thus the Eleventh Amendment does not bar the award of an attorney's fee against the defendant in this case.

■ The defendant contends that the plaintiff is not a "prevailing party" who is entitled to an attorney's fee under the terms of the Act, since the case was terminated by a consent decree rather than by an order of court. The legislative history of the Act is very explicit on this point. "Moreover, for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No.94–1011, p. 5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912. That same Senate report cites with approval *Kopet v. Esquire Realty Co.,* 523 F.2d 1005, 1008 (2d Cir. 1975), where the court held that "federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, e. g., after a settlement."

The defendant urges that awarding an attorney's fee in this case would frustrate attempts to settle cases, in that defendants would litigate in order to avoid paying an attorney's fee. This argument cuts with at least equal force in the other direction, however, because plaintiffs who thought they would be deprived of an attorney's fee unless a case was adjudicated on the merits would likewise be reluctant to settle, even in instances where the defendant offered them full relief in the consent decree. Other courts, agreeing with this analysis, have held that the 1976 amendment to 42 U.S.C. § 1988 permits the award of an attorney's fee in spite of the fact that the case is disposed of without final adjudication on the merits. *See Brown v. Culpepper,* 559 F.2d 274, 276–277 (5th Cir. 1977); *Howard v. Phelps,* 443 F.Supp. 374, 376–377 (E.D.La. 1978); *Buckton v. National Collegiate Athletic Association,* 436 F.Supp. 1258, 1264–1265 (D.Mass.1977).

■ The fact that the plaintiff in this case did not receive all the relief originally requested in her complaint also does not preclude recovery of an attorney's fee. The Senate report on the bill notes that an attorney's fee award is "appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S.Rep.No.94–1011, p. 5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912. As noted previously the plaintiff in this case received through the consent decree, substantially all of the relief originally sought in her complaint; thus she is entitled to an attorney's fee even though she did not prevail in every particular.

■ The defendant further argues that the Civil Rights Attorney's Fees Awards Act of 1976 does not permit an attorney's fee award in this case, because the defect in the state law is an inconsistency with a federal *statute,* rather than with the federal *Constitution.* It is true that there is no federal court jurisdiction, under 28 U.S.C. § 1343(3) or § 1343(4), to entertain a § 1983

claim which is based only on statutory, rather than constitutional, grounds. *Andrews v. Maher,* 525 F.2d 113, 118–120 (2d Cir. 1975). However, where the § 1983 complaint states both statutory and constitutional claims, 42 U.S.C. § 1343(3) confers jurisdiction on the federal court to hear the constitutional claim. Then, so long as the constitutional claim is of sufficient substance to support federal jurisdiction, the federal court may decide the statutory claim as a matter of pendent jurisdiction and avoid ultimate decision on the constitutional claim. *Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Under the *Hagans* doctrine, this Court would have had jurisdiction over the case, and could have decided the statutory claim without reaching the constitutional issue, as long as the Court first found that the constitutional issue was not "obviously frivolous," "wholly insubstantial," or "so attenuated and unsubstantial as to be absolutely devoid of merit." *Id.* at 536–537, 94 S.Ct. at 1379.

If the instant case were now before the Court on a motion to dismiss, the Court would rule as a matter of law that there is federal jurisdiction. The complaint raises several constitutional issues which are "substantial" within the meaning of *Hagans v. Lavine,* to wit: whether an impermissible distinction had been created between those working welfare recipients whose work-related expenses were fully considered in the computation of AFDC awards and those whose work-related expenses were not fully considered, in violation of the equal protection clause; whether the defendant, by creating a table of standard allowances, which could not be challenged in individual cases, set up an irrebuttable presumption with respect to work-related expenses, in violation of the due process clause; and whether the failure to provide written notice of the opportunity for an evidentiary hearing, if the welfare recipient disputed the defendant's calculation of work-related expenses, violated the due process clause.

■ Since there would be federal jurisdiction to hear this case, the fact that the Court, if it had been called upon to rule on the merits of the case, would have decided it on statutory grounds, is no reason to deny the plaintiff an attorney's fee. As was said where an attorney's fee was awarded pursuant to 42 U.S.C. § 1988 in a case similar to the one at bar:

> "[I]t seems manifestly unfair to penalize plaintiffs who couple their constitutional claims with meritorious statutory claims and thereby facilitate the federal policy of avoiding unnecessary constitutional decisions. To deny such plaintiffs the attorneys' fees to which they might otherwise be entitled frustrates rather than promotes the policy of the Act." *Southeast Legal Defense Group v. Adams,* 436 F.Supp. 891, 895 (D.Oregon 1977).

■ Having determined that the plaintiff is entitled to an attorney's fee, the Court must determine how much the award should be. This Court has recently held that the most important factors to be considered in calculating an award for attorneys' fees are the time and labor expended, counsels' experience and reputation, the magnitude and complexity of the litigation, the amount recovered, the attorneys' "risks of litigation," and awards in similar cases. *Fitzpatrick v. Bitzer,* 455 F.Supp. 1338 (1978). The plaintiff was represented in this case by the Legal Aid Society of Hartford County, Inc., and she was not required to pay for the services rendered. Affidavits submitted by the plaintiff's two attorneys, Joan E. Pilver and David C. Shaw, indicate that at the time the suit was instituted they each had a little more than two years' experience at the Bar. Shaw spent a total of 149½ hours on the case, while Pilver spent 99¾ hours. Affidavits submitted by two other Hartford attorneys disclose that the customary fee in the Hartford area for lawyers with three years of experience is $45 per hour. Considering all the factors in this case, including the fact that there was never an evidentiary trial and that the aggregate in-court time for both attorneys was 5½ hours, the Court finds the hourly rate of $45 to be fair and reasonable.

■ Before applying this rate to the number of hours claimed by Pilver and Shaw, it is necessary to subtract the number of hours which were devoted to seeking an award of attorneys' fees, because those hours were spent solely for the attorneys' benefit and did not benefit the plaintiffs. *See City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1102 (2d Cir. 1977); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 111 (3d Cir. 1976). While those cases arose in contexts other than an award under 42 U.S.C. § 1988, at least one other court has held that the same reasoning applies in applications for attorneys' fees under the civil rights statutes. *Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 705 (E.D.Pa.1977). Pilver spent 15½ hours working on the attorneys' fee application and Shaw spent 42½ hours. Subtracting these hours from the total claimed by the attorneys leaves 84¼ hours for Pilver and 107½ hours for Shaw, for a total of 191¼ hours.

■ The Court has decided to disallow one half of the hours worked, for the reason that the issues involved in the case were relatively simple and most attorneys would not have spent so many hours on the case. The plaintiffs' attorneys themselves concede that the case was not a complex one:

"The law is unmistakenly [*sic*] clear. The Supreme Court in *Shea v. Vialpando,* [416 U.S. 251 (1974)] held that the incentive earnings provisions of the Social Security Act required state agencies to disregard a working welfare recipient's earned income equivalent to all his or her reasonable work related expenses." (footnote omitted). Brief in Support of Plaintiff's Motion for Attorney's Fees at 10.

Computing the 95⅝ allowable hours at $45 per hour would yield a total of $4,303.13. By way of comparison, this Court recently awarded $6,275 for services at the District Court level in a case where the legal theory advanced by the plaintiff was a novel one and the plaintiff's attorney had a great deal more experience than the present attorneys. *Fitzpatrick v. Bitzer,* 455 F.Supp. 1338 (1978).

■ This $4,303.13 figure must be further reduced by 30%, which is the percentage of the budget of the plaintiff's attorneys that is distributed, out of Title XX funds, by the defendant. Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.,* is a program wherein federal money is distributed by state agencies for programs designed to benefit the economically disadvantaged. The Department of Social Services, which is the single agency designated by the Governor of Connecticut to administer the State's Title XX program, has considerable discretion in determining how funds will be allocated. An affidavit filed by the Executive Director of the Legal Aid Society of Hartford County, Inc., discloses that the Legal Aid Society had a budget of $131,379 in 1975, $203,771 in 1976, and $233,493 in 1977. During those same years the Legal Aid Society received Title XX funding in the amounts of $37,157, $32,390, and $100,498. Thus, during the years in which this lawsuit was pending, the Legal Aid Society received approximately 30% of its funding from Title XX.

■ An award of attorneys' fees is not precluded either by the fact that the plaintiff was not required to pay her counsel, *Jordan v. Fusari,* 496 F.2d 646, 649 (2d Cir. 1974), or by the fact that the plaintiff's attorneys are publicly-funded. *Torres v. Sachs,* 538 F.2d 10, 11–12 (2d Cir. 1976). Nonetheless, "it is appropriate for the district court . . . to consider the factor of federal funding in its computation of a discretionary attorney's fee award." *EEOC v. Enterprise Ass'n Steamfitters,* 542 F.2d 579, 593 n. 13 (2d Cir. 1976), *cert. den.* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). This factor is particularly relevant in this case, in that not only did the plaintiff's attorneys receive federal funding but that funding was distributed by the very defendant from whom the plaintiff now seeks to collect an attorney's fee.

This Court, in exercising its discretion, is of the opinion that the award should be reduced to reflect the public contribution of federal ·funds to the plaintiff's attorneys. The purpose of the Civil Rights Attorney's

Fees Awards Act of 1976 is to encourage the institution of meritorious lawsuits which, due to economic considerations, would not be brought if an attorney's fee could not be assessed against the defendant. In the instant case the defendant has already done its part to encourage such lawsuits by distributing federal money to the Legal Aid Society of Hartford County, Inc. Failing to take this factor into account when awarding an attorney's fee would be to force the defendant to pay twice for the same legal services. Therefore, the initial figure of $4,303.13 will be reduced by 30%.

Accordingly, the total award for attorneys' fees in this case shall be $3,012.19. SO ORDERED.