**Ethel CLEARY, on behalf of herself and all other persons similarly situated, Plaintiff,**

v.

**Barbara B. BLUM, Individually and as Commissioner of the New York State Department of Social Services, Defendant.**

**No. 79 Civ. 1217 (KTD).**

United States District Court, S. D. New York.

Jan. 21, 1981.

Westchester Legal Services, Inc., White Plains, N. Y., for plaintiff; Martin A. Schwartz, White Plains, N. Y., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant; Kathleen Gill Miller, Asst. Atty. Gen., New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Ethel Cleary is a 73 year old widow who suffers from arteriosclerosis and exemia, a circulatory ailment. Mrs. Cleary is also an amputee. Although Mrs. Cleary's resources are insufficient to meet the costs of necessary medical care and services, she does not qualify for public assistance because her resources exceed certain allowable limits. Instead, Mrs. Cleary is eligible for Medic-

aid[1] benefits because she is deemed to be a "SSI-related medically needy"[2] person.

Eligibility for and the amount of Medicaid assistance to which a SSI-related medically needy person is entitled depends on the amount the applicant is able to contribute towards his own expenses. An applicant's "liability" is determined by subtracting from his annual net income an amount which the applicant may retain to meet his personal needs. If the net income exceeds the amount allowed for personal needs, the excess is considered available to meet the individual's medical expenses. 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 435.800 et seq.

When Mrs. Cleary applied for Medicaid benefits, however, the defendant failed to correctly compute her liability. Specifically, the defendant failed to subtract $240 from Mrs. Cleary's total annual income as required by law,[3] before determining the amount of Mrs. Cleary's income which exceeds her personal needs allowance. As a result, plaintiff is required to contribute $20 more a month for her medical expenses than a person who receives public assistance under the Aid To Families with Dependent Children Program [hereinafter "AFDC"]. This outcome directly contravenes the holding in *Aitchison v. Berger*, 404 F.Supp. 1137 (S.D.N.Y.1975), *aff'd*, 538 F.2d 307 (2d Cir. 1976), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (exempt income may not be less than AFDC standard of need).

After exhausting her administrative remedies, Mrs. Cleary instituted this § 1983 class action on March 9, 1979. Plaintiff alleged that the New York Department of Social Services' [hereinafter the "defendant"] determination of eligibility for and the amount of medical assistance to which SSI-related medically needy persons are en-

titled is contrary to federal statutory and constitutional law. After discovery and negotiations, the parties entered into a consent decree which was approved by the court on March 11, 1980.

The plaintiff now seeks an award of costs and attorneys' fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976 [hereinafter "Fees Act"], 42 U.S.C. § 1988. The defendant opposes such an award arguing that the court is without subject matter jurisdiction and that an award of attorneys' fees is inappropriate because the case was terminated by settlement. Defendants also allege that an award in this case will discourage settlements in similar cases.

The court rejects each of these arguments and holds that plaintiff's attorneys are entitled to a fee award of $3,951.92.

## I

Defendant first objects to the award of attorneys' fees on jurisdictional grounds. Defendant argues that the district court lacked jurisdiction over this matter because plaintiff's claims failed to state a constitutional claim of sufficient substance to support federal jurisdiction under 28 U.S.C. § 1343(3) or to meet the $10,000 threshold of 28 U.S.C. § 1331.

I accepted jurisdiction of this matter on the theory that plaintiff presented a constitutional claim sufficient to confer jurisdiction under 28 U.S.C. § 1343(3). *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The constitutional question asserted by the plaintiff is clearly substantial, to wit: whether New York's disparate treatment of two classes of potential Medicaid recipients in determining their eligibility for Medicaid, and the

1. Medicaid is a cooperative federal-state medical assistance program operated under state direction, subject to federal statutory and regulatory guidelines. 42 U.S.C. §§ 1396–1396g.

2. A "medically needy" person is one who has income and resources which exceed the amounts allowed by law to qualify for public assistance, but which are insufficient to meet the costs of necessary medical care and serv-

·ices. An "SSI-related" medically needy person is one who is aged, blind or disabled who would, but for his or her income, be eligible for Supplemental Security Income (SSI) assistance, but whose income or resources are insufficient to meet the costs of necessary medical care. See Memorandum for Defendant at 1.

3. 42 U.S.C. § 1396a(a)(17).

amount of Medicaid to which they were entitled, violated the equal protection clause of the fourteenth amendment. This issue is neither frivolous nor devoid of merit. As a matter of law, there is federal jurisdiction over this issue, including pendent statutory claims. *Id.*

In any event, the court has jurisdiction over plaintiff's Social Security Act claim due to a recent amendment of 28 U.S.C. § 1331. Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No.93–259 (amending 28 U.S.C. § 1331 (1958)). As amended, § 1331 no longer imposes an amount in controversy requirement on cases arising under the Constitution, laws or treaties of the United States. *Id.* The Act applies to all actions pending on the date of the enactment of the Act. *Id.*

■ I hold that the instant action is still pending even though the only remaining issue is that of attorneys' fees. *See Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977); *see also Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). As a result, the court has jurisdiction of this action.

The defendant's second contention is that the plaintiff is not a "prevailing party" who is entitled to attorneys' fees under the Fees Act, 42 U.S.C. § 1988, since the case ended in a settlement rather than through an order of the court.

This argument was rejected by the Second Circuit in *Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (fees awarded where dispute settled by consent decree). In *Maher,* both the Second Circuit and Supreme Court relied upon the Senate Report for Section 1988 which stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a con-

sent judgment or without formally obtaining relief." S.Rep.No.1011, 94th Cong., *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5912; *accord, Kopet v. Esquire Realty Co.,* 523 F.2d 1005, 1008 (2d Cir. 1975). The Supreme Court in *Maher* concluded that "the fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of Section 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that plaintiff's rights have been violated." *Gagne v. Maher,* 448 U.S. at 129, 100 S.Ct. at 2575. Rather, the purpose of the Fees Act is "to remove financial impediments that might preclude or hinder 'private citizens', collectively or individually, from being 'able to assert their civil rights.' Senate Report at p. 2, U.S.Code Cong. & Admin. News 1976, p. 5910." *Zarcone v. Perry,* 581 F.2d 1039, 1042 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

■ Applying these standards here, I find that the prerequisites for an award of attorneys' fees have been met. The initiation of this lawsuit encouraged the defendant to conform its eligibility and award policies to the requirements of the equal protection clause and the Social Security Act. *See Chatterton v. Blum,* No. 78–305 (N.D.N.Y., filed Sept. 3, 1980). The settlement agreement[4] gives the plaintiff, as well as the class she represented, virtually all the relief sought in the complaint. Under the settlement, the defendant agreed to (i) correctly compute the plaintiff's eligibility for Medicaid benefits and the amount of benefits to which she is entitled,[5] and (ii) issue a directive to each of the local Social Service districts within New York State specifying the formula for determining Medicaid eligibility and requiring that each

---

**4.** Stipulation of Settlement and Order, Mar. 11, 1980.

**5.** Attaining benefits for herself is sufficient to establish plaintiff as a prevailing party. As the Second Circuit stated in *Zarcone v. Perry,* 581 F.2d 1039, 1042 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38, "the

Act's legislative history is clear that in authorizing awards of attorneys' fees to plaintiffs in civil rights actions, Congress was concerned with enforcement not only of the civil rights of the public at large and of identifiable groups, but also with the rights of individual plaintiffs."

district take immediate steps to insure that this formula is applied in all appropriate cases. By these terms, the plaintiff and other Medicare applicants are assured that proper and equitable Medicare computations will be employed by the New York Department of Social Services. In light of these achievements, Mrs. Cleary is clearly a "prevailing party" within the meaning of the Fees Act. *See Gagne v. Maher*, 594 F.2d at 340; S.Rep.No.1011, 94th Cong., reprinted in [1976] U.S.Code Cong. & Ad. News 5910, 5912.

■ Defendant's contention that plaintiff's suit was unnecessary is also without merit. Plaintiff instituted this action only after exhausting available administrative remedies. Defendant's continued failure to modify plaintiff's Medicaid evaluation entitled plaintiff to seek relief in the federal courts. Moreover, the plaintiff ultimately cooperated in reaching a settlement with the defendant. *See Chatterton v. Blum*, No. 78–305 (N.D.N.Y., filed Sept. 3, 1980). Finally, the absence of bad faith on the part of the defendant is not a reason to deny attorneys' fees when an entitlement to such fees is grounded in Section 1988. *Hutto v. Finney*, 437 U.S. 678, 693, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978).

The last argument asserted by the defendant is that awarding attorneys' fees in this case will encourage defendants to litigate rather than settle similar matters in order to avoid paying attorneys' fees. This argument, however, cuts both ways. If attorneys' fees are disallowed for settled cases, plaintiffs too will be reluctant to settle.

■ It is true that attorneys' fees generally are not recoverable by the winning party in federal litigation. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Congress, however, can authorize exceptions to the usual rule, *id.*, and has done so here by electing to recompense those who successfully defend basic civil rights. To deny plaintiffs the attorneys' fees to which they are otherwise entitled because their rights were vindicated through settlement would frustrate the policy of the Fees Act.

## II

■ Having determined that the plaintiff is entitled to attorneys' fees, the court must decide how much this award should be. The most important factors to be considered in computing attorneys' fees are time and labor expended, counsels' experience, the magnitude and complexity of litigation, the amount recovered, the attorneys' "risks of litigation," and awards in similar cases. *Gagne v. Maher*, 455 F.Supp. 1344, 1348 (1978). The plaintiff in this case was represented by the Westchester Legal Services, Inc., and she was not required to pay for services rendered. Affidavits submitted by the plaintiff's three attorneys, Martin A. Schwartz, William A. Glaberson and Renee H. Reixach indicate that at the time the suit was instituted they had a little more than 11 years, 1 year and 7 years experience, respectively, at the Bar. Considering all the factors in this case, including the fact that there was never an evidentiary trial nor any other in-court time for any of the attorneys, I find that the following hourly rates are fair and reasonable:

Martin A. Schwartz—$75 per hour

William A. Glaberson—$45 per hour

Renee H. Reixach—$60 per hour

Schwartz claims compensation for 30.75 hours of work on the case and the attorneys' fees issue. Glaberson claims compensation for 66.25 hours and Reixach claims 3 hours. The Second Circuit has instructed district courts passing on fee applications to scrutinize them with an "eye to moderation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) With this admonishment in mind, I exclude from the total compensable hours 7.5 of the 15 hours worked by Schwartz on the attorneys' fees issue, .5 of the hour Schwartz claims for reviewing a four-page discovery request and 10 of the 66.1 hours Glaberson worked on the case because the time claimed for these activities is unreasonably high. Most attorneys would not have spent so many hours on these issues. *See Gagne v. Maher*, 455 F.Supp. 1344, 1349 (2d Cir. 1978). I also subtract the 5.3 hours Glaberson spent de-

livering and filing papers, a task which could have been accomplished by a non-lawyer at a much lower rate. *See Johnson v. Georgia Highway*, 488 F.2d 714 (5th Cir. 1974). I further disallow 2.5 of the 5 hours Schwartz spent researching the complaint because it was duplicative of work performed by Glaberson. *Id.* at 717. Finally, due to Ms. Reixach's failure to keep current and accurate time records [6] despite repeated admonitions by the Second Circuit on the import of doing so, I must exclude 1½ of the 3 hours claimed by Ms. Reixach.

Computing the total allowable hours worked by plaintiff's attorneys at the approximate hourly rates and the necessary costs incurred in this suit yields the following:

| | | | |
|---|---|---|---|
| Fees: | Schwartz: | 20.25 hours a $75/hour = | $1,518.75 |
| | Glaberson: | 50.95 hours a $45/hour = | $2,292.75 |
| | Reixach: | 1.5 hours a $60/hour = | $ 90.00 |
| Costs: | Filing Fee | | 15.00 |
| | Telephone Bill (Ms. Reixach) | | 15.42 |
| | Duplicating Expense | | 20.00 |
| | | TOTAL: | $3,951.92 |

Accordingly, the total award for attorneys' fees in this case is $3,951.92.

SO ORDERED.

---

**6.** Ms. Reixach's record entry of a 1 hour telephone conversation with Mr. Glaberson on December 22, 1978 is at odds with Mr. Glaberson's entry of only 25 minutes and her telephone records which register a 24 minute call placed on December 22, 1978. In addition, Ms. Reixach has no records of time spent reviewing documents and corresponding with Mr. Glaberson after March 2, 1979.