**Virginia GAGNE, Individually, and on behalf of all others similarly situated, Plaintiff-Appellee-Cross-Appellant,**

v.

**Edward W. MAHER, Commissioner of Social Services, Defendant-Appellant.**

**No. 503, Docket 78–7414.**

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1979.

Decided March 9, 1979.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Paul M. Shapiro, Asst. Atty. Gen., Hartford, Conn., of counsel), for defendant-appellant.

David C. Shaw, Hartford, Conn. (Legal Aid Society of Hartford, County, Inc., Joan Pilver, Hartford, Conn., of counsel), for plaintiff-appellee-cross-appellant.

Before WATERMAN, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

This case raises interesting questions regarding application of the Civil Rights Attorney's Fees Awards Act of 1976 (Fees Act), which amended 42 U.S.C. § 1988. Defendant Edward W. Maher, Commissioner of Social Services of the State of Connecticut, appeals from an order of the United States District Court for the District of Connecticut, 455 F.Supp. 1344 (1978), Chief Judge T. Emmet Clarie, awarding attorneys' fees of $3,012.19 to the Legal Aid Society of Hartford County, Inc., the attorneys for plaintiff Virginia Gagne, to be paid by appellant Commissioner in his official capacity out of state funds.[1] The State asserts that the award of attorneys' fees in the circumstances of this case is not authorized by the Fees Act and, in any event, is barred by the Eleventh Amendment. Plaintiff cross-appeals, arguing that the award was too low. For reasons given below, we affirm the judgment of the district court on the State's appeal, and remand for further consideration on plaintiff's cross-appeal.

I

Virginia Gagne, a working recipient of Aid to Families with Dependent Children (AFDC), commenced the underlying action that gave rise to the fee award in January 1975. On behalf of herself and others similarly situated, plaintiff alleged that Connecticut's policies and procedures for determining work-related expenses used in computing AFDC benefits violated the United States Constitution and the Social Security Act.

In the original complaint, plaintiff sought a declaratory judgment that Connecticut's regulations regarding maximum work-related transportation and lunch allowances contravened federal statutes and the United States Constitution, an injunction requiring defendant to take into account all reasonable work-related expenses in computing AFDC benefits and an order requiring defendant to notify affected class members of their right to reapply for benefits. In May 1975, while discovery was taking place in the action, defendant amended his regulations to provide expressly for deduction of all reasonable work-related expenses. In September 1976, plaintiff filed an amended complaint, alleging that the new policy as implemented still resulted in routine disallowance of expenses in excess of the standard allowances and that the State had not adopted reasonable procedures to notify AFDC recipients of their right to deduct work-related expenses. The parties negotiated a settlement in early 1977, and the district court entered a consent decree in March 1977. In this settlement defendant agreed to allow AFDC recipients to prove that they incurred work-related expenses in excess of standard allowances, to double the standard allowance for transportation expenses, to recompute the standard allow-

---

1. For this reason and for convenience, we frequently refer hereafter to appellant as the State.

ances annually using cost of living data and to notify all working recipients of their rights with respect to the work-related expense deduction.

The district judge viewed the consent degree as a victory for plaintiff and held, over the objections of the State, that she was entitled to a fee award under the Fees Act. Finding that such an award against the State would not violate the Eleventh Amendment, the judge granted plaintiff's attorneys' fees of $3,012.19.

## II

Before us, the State continues to oppose the fee to plaintiff's lawyers. We turn first to the question whether Congress intended to authorize an award of attorneys' fees in this situation. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court held that only Congress can authorize an exception to the usual American rule that attorneys' fees are usually not recoverable by the winning party in litigation in federal courts. Congress thereafter amended 42 U.S.C. § 1988 in the Fees Act, Pub.L. No. 94–559, 90 Stat. 2641 (1976), to permit a federal court to award attorneys' fees to a prevailing party in suits brought to enforce certain civil rights acts, among them 42 U.S.C. § 1983. The Fees Act provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs. (Emphasis supplied.)

We explained the purpose of this Act in *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 36 & n.2 (2d Cir. 1978):

> In order to encourage compliance with certain civil rights laws Congress has of-

ten authorized recovery of attorneys' fees by plaintiffs who, through their private suits under such statutes, act as private attorneys general by enforcing federal policy. E. g., Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612(c); the Equal Employment Amendments of 1972, 42 U.S.C. § 2000e–16(b). In accordance with this approach, prior to *Alyeska* many federal courts had exercised their traditional equity powers to award attorneys' fees under the Reconstruction Civil Rights Acts. . . . The aim of § 1988, therefore, was to regain consistency in the application of fee shifting under the civil rights acts.

See also S.Rep.No. 1011, 94th Cong., 2d Sess. (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, p. 5908 (Senate Report).

The State contends that under the language of the Act quoted above, plaintiff is entitled to attorneys' fees only if she was the prevailing party on her constitutional claims, since the Fees Act does not authorize fees for successful claims under the Social Security Act. Appellant argues that Congress did not intend to authorize fee awards when plaintiff joins a constitutional claim with such a statutory claim and then the entire case is settled without a judicial determination that plaintiff had a meritorious constitutional claim. The State further argues that plaintiff cannot be viewed as the prevailing party on any claim because she received very little of the relief requested, most of the terms of the consent degree did not change existing practices and any changes that were brought about by the consent decree would have been adopted by the State on its own initiative anyway.

Although the Fees Act and its legislative history do not specifically state that attorneys' fees are authorized in this precise situation, the statements of Congressional intent lead us to that conclusion. The Senate Report indicates that attorneys' fees should be awarded in a wide variety of situations, including consent judgments, and cites, among other authorities, *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir.

1975).[2] In that case, 523 F.2d at 1008, and in *Blau v. Rayette-Faberge, Inc.,* 389 F.2d 469 (2d Cir. 1968), we indicated in analogous situations that counsel fees could be awarded whenever plaintiff's efforts confer benefits on the class, including those obtained through settlement. In addition, the House Report on the Fees Act directly addressed the situation in which plaintiff joins a constitutional claim with a non-fee statutory claim:

> To the extent a plaintiff joins a claim under one of the statutes enumerated in [the Fees Act] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. . . . In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive . . . .. In such cases, if the claim for which fees may be awarded meets the "substantiality" test, see *Hagans v. Lavine,* [415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)]; *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact."

H.R.Rep.No. 1558, 94th Cong., 2d Sess. at 4 n.7 (1976) (Citations omitted). See also *Kimbrough v. Arkansas Activities Association,* 574 F.2d 423 (8th Cir. 1978).

Given the legislative intent to authorize award of attorneys' fees to the prevailing party in settled cases and to avoid unnecessary decision of constitutional issues, we think it clear that Congress intended the test set forth in the House Report to govern the award of attorneys' fees in suits that are settled as well as in those that proceed to a judgment on a "non-fee" claim. The State's interpretation of legislative intent would encourage plaintiffs to try cases in which reasonable settlement offers have been received, merely to ensure a fee award. Cf. *Parker v. Matthews,* 411 F.Supp. 1059, 1062 (D.D.C.1976), aff'd sub nom. *Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977). In view of the legislative history, we cannot attribute such an intent to Congress. Thus we conclude that once it has been determined that plaintiff obtained benefits for the class in the settlement on some claim, plaintiff is "the prevailing party" within the meaning of the statute. It does not matter which claim induced the concessions or which claim would have been successful at trial, as long as the constitutional claim is substantial and arises from the same operative facts as the non-fee claim.

Applying these standards here, we find that the prerequisites for an award of attorneys' fees have been met. Although the State argues that plaintiff did not prevail on any grounds, the district court found otherwise:

> The consent decree gave the plaintiff, as well as the class she represented, virtually all the relief sought in the complaint. Under the terms of the consent decree the defendant agreed to: permit working AFDC recipients to prove that they incur work-related expenses which are in excess of the standard allowance established by the defendant; conduct an annual review for the purpose of updating the standard allowances; publish heretofore unpublished standard allowances; double the standard transportation allowance from $.06 to $.12 per mile; provide writ-

**2.** The Senate Report at 5, [1976] U.S.Code Cong. & Admin.News at 5912–13 states:

> Moreover, for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. *Kopet v. Esquire Realty Co.,* 523 F.2d 1005 (2d Cir. 1975), and cases cited

therein; *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Richards v. Griffith Rubber Mills,* 300 F.Supp. 338 (D.Or.1969); *Thomas v. Honeybrook Mines, Inc.,* 428 F.2d 981 (3d Cir. 1970); *Aspira of New York, Inc. v. Board of Education of City of New York,* 65 F.R.D. 541 (S.D.N.Y.1975).

ten notice to working AFDC recipients of the precise amount of work-related expenses which are to be allowed as to each recipient; provide written notice of the AFDC recipients' right to an evidentiary hearing in the event that the recipient disagrees with the defendant's calculation of work-related expenses; and stay any reduction in AFDC benefits if the recipient requests an evidentiary hearing within ten days of receiving the aforesaid written notice.

455 F.Supp. at 1346. These findings are amply justified by the record, which also demonstrates that the State changed its policies with great reluctance and only under the pressure of the lawsuit. Whether the court could have ordered the State to accept all the changes this lawsuit prompted it to make is irrelevant. The consent decree was the product of the litigation and plaintiff is entitled to use it to justify an award.

The district court, after noting that federal constitutional claims are "substantial" if they are sufficient to confer jurisdiction under the test of *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), found that plaintiff had raised several substantial constitutional claims that were properly pendent to the statutory claims. 455 F.Supp. at 1348. The court listed these constitutional claims as:

whether an impermissible distinction had been created between those working welfare recipients whose work-related expenses were fully considered in the computation of AFDC awards and those whose work-related expenses were not fully considered, in violation of the equal protection clause; whether the defendant, by creating a table of standard allowances, which could not be challenged in individual cases, set up an irrebuttable presumption with respect to work-related

expenses, in violation of the due process clause; and whether the failure to provide written notice of the opportunity for an evidentiary hearing, if the welfare recipient disputed the defendant's calculation of work-related expenses, violated the due process clause.

Id. We hold that the district court correctly found that plaintiff's constitutional claims were "substantial" under the relevant standard. Thus we conclude that on these facts Congress intended to authorize an award of fees to plaintiff's attorneys.

### III

■ Appellant also argues that Congress did not have the power to authorize a fee award against a state in these circumstances. Although the Eleventh Amendment generally bars federal court awards of compensatory relief to be paid from a state treasury, see, e. g., *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), there are at least two exceptions to the Eleventh Amendment's general prohibition relevant here.[3] First, in interpreting the Eleventh Amendment, the Supreme Court has held that only retroactive monetary relief is prohibited, and that prospective relief against a state does not violate the Amendment even though it has a significant "ancillary effect on the state treasury." *Edelman v. Jordan,* supra, 415 U.S. at 667–68, 94 S.Ct. at 1358. This court has held that an award of attorneys' fees fits within the "ancillary effect" doctrine when the award is incident to a judgment granting prospective relief. *Fitzpatrick v. Bitzer,* 519 F.2d 559, 571–72 (2d Cir. 1975), affirmed in part, reversed in part, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Class v. Norton,* 505 F.2d 123, 126 (2d Cir. 1974); *Jordan v. Fusari,* 496 F.2d 646, 651 (2d Cir. 1974).[4] In addition, the Supreme

---

**3.** See generally, Note, Attorneys' Fees and the Eleventh Amendment, 88 Harv.L.Rev. 1875, 1888–1902 (1975).

**4.** The circuits are divided on this issue with the First and Fourth Circuits in agreement with this Circuit. Compare *Souza v. Travisono,* 512 F.2d 1137, 1139–40 (1st Cir.), vacated and re-

manded, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975) (for disposition after remand, see *Souza v. Southworth,* 564 F.2d 609 (1st Cir. 1977)); *Boston Chapter, NAACP, Inc. v. Beecher,* 504 F.2d 1017, 1028–30 (1st Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975) and *Thonen v. Jenkins,* 517 F.2d 3, 7–8 (4th Cir. 1975) with *Skehan v. Board of*

Court in a pre-*Edelman* summary decision, affirmed a three-judge court award of attorneys' fees against a state. *Sims v. Amos*, 340 F.Supp. 691 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). In this circuit, summary holdings of the Supreme Court are binding precedent, *Doe v. Hodgson*, 500 F.2d 1206, 1207–08 (2d Cir. 1974), and we do not interpret subsequent Supreme Court decisions as overruling *Sims v. Amos*.[5] Thus, we adhere to our own precedents, which we believe are consistent with Supreme Court authority, and hold that the award of attorneys' fees in this case was a permitted "ancillary effect" of a proper prospective decree and therefore not barred by the Eleventh Amendment.

■ Another exception to the Eleventh Amendment's protection of state treasuries is an award authorized by Congress pursuant to section 5 of the Fourteenth Amendment. See *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In *Hutto v. Finney*, supra note 5, 98 S.Ct. at 2575, the Supreme Court ruled that "Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amend-

ment," and that "[w]hen it passed the [Fees] Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States."[6] The State contends, however, that Congress' power under the Fourteenth Amendment to override state sovereign immunity extends only to suits in which a party prevails on a *constitutional* claim. On this view, Congress cannot validly authorize a fee award against a state in the absence of a judicial determination that plaintiff had a meritorious constitutional claim. We disagree. We think it is within Congress' Fourteenth Amendment power to authorize a fee award when a party prevails on a statutory claim as long as the pendent constitutional claim is a substantial one and arises out of the same operative facts. Such a fee award furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues. As we understand the Supreme Court decisions, any appropriate means of implementing the Fourteenth Amendment overrides the State's Eleventh Amendment rights, see, e.

*Trustees*, 501 F.2d 31, 42 & n.7 (3d Cir. 1974), vacated and remanded, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), remanded, 538 F.2d 53 (1976) (en banc), cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976) and *Jordon v. Gilligan*, 500 F.2d 701, 705–10 (6th Cir. 1974), cert. denied, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975). See also *Samuel v. University of Pittsburgh*, 538 F.2d 991, 999 (3d Cir. 1976); *Brandenburger v. Thompson*, 494 F.2d 885, 888 (9th Cir. 1974).

5. Although some courts have ruled that the affirmance in *Sims v. Amos* was implicitly overruled by *Edelman v. Jordon*, see *Jordon v. Gilligan*, supra note 4, 500 F.2d at 706–08; *Skehan v. Board of Trustees*, supra note 4, 501 F.2d at 42 & n.7; but see *Bond v. Stanton*, 528 F.2d 688, 691–92 (7th Cir. 1976), remanded, 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1977), fee award reinstated on basis of Fees Act, 555 F.2d 172 (7th Cir. 1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), we think that recent Supreme Court actions indicate at most that the Court still considers the question an open one. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 269 n.44, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975), the Court stated that "an award [of attorneys' fees] against a state government

would raise a question with respect to its permissibility under the Eleventh Amendment, a question on which the lower courts are divided," but the Court expressly declined to comment on the issue. The Court included in its list of conflicting lower court decisions the three-judge court ruling in *Sims v. Amos*, supra. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), affirming this court's award of attorneys' fees, 519 F.2d at 571–72, the Court said it did not have to reach the issue whether we had correctly applied the "ancillary effect" doctrine, because the award in that case was justified by Congress' exercise of its power under the Fourteenth Amendment, 427 U.S. at 456–57, 96 S.Ct. 2666. Most recently, the Court held in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), that an award of fees against a state defendant that had acted in bad faith was a proper exercise of the district court's power to enforce its prospective judgment and thus was permitted under the "ancillary effect" doctrine.

6. See also *Morrow v. Dillard*, 580 F.2d 1284, 1296–1301 (5th Cir. 1978); *Gates v. Collier*, 559 F.2d 241 (5th Cir. 1977).

g., *Fitzpatrick v. Bitzer,* supra, 427 U.S. at 453, 456, 96 S.Ct. 2666; *Katzenbach v. Morgan,* 384 U.S. 641, 648–50, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). We hold that the authorization of attorneys' fees to be awarded under the standards set forth above is an appropriate way to achieve the competing goals described above. See *Lund v. Affleck,* 587 F.2d 75, 76–77 (1st Cir. 1978); *Bond v. Stanton,* 555 F.2d 172, 174–75 (7th Cir. 1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Southeast Legal Defense Group v. Adams,* 436 F.Supp. 891, 893–95 (D.Or.1977).

In sum, we find that the Eleventh Amendment does not bar the fee award here, that the district judge correctly interpreted the Fees Act and that the State's arguments in opposition to the award to plaintiff's attorneys are without merit.[7]

### IV

We turn now to the cross-appeal, in which plaintiff argues that the district judge abused his discretion by awarding attorneys' fees that were much too low. The fee affidavits stated that plaintiff's two attorneys worked almost 250 hours on the case, of which 58 hours represented time spent on the fee application. If all these hours had been compensated at the customary rate, plaintiff's lawyers would have received over $11,000. The district judge, however, awarded them only $3,012.19. He first determined, on the basis of affidavits regarding customary rates, that a fee of $45.00 an hour was justified. The judge then refused to award any fee for the 58 hours spent on the fee application, disallowed fees for one-half of the remaining time and further reduced the award by 30 percent on the ground that the

program employing plaintiff's counsel receives funding under Title XX of the Social Security Act, 42 U.S.C. § 1397 et seq. Plaintiff argues that the district judge abused his discretion in each instance.

The issue whether plaintiff's attorneys can recover fees for services performed in connection with the fee application is an important one, since the question is bound to recur in applications based upon the Fees Act. Chief Judge Clarie apparently felt compelled to disregard the time so spent, since he observed:

> Before applying this rate to the number of hours claimed by Pilver and Shaw, it is *necessary* to subtract the number of hours which were devoted to seeking an award of attorneys' fees, because those hours were spent solely for the attorneys' benefit and did not benefit the plaintiffs. (Emphasis supplied.)

455 F.Supp. at 1349. The issue has arisen in at least two circuit courts of appeals recently, and both have ruled that such time is compensable. See *Lund v. Affleck,* supra, 587 F.2d at 77; *Prandini v. National Tea Co.,* 585 F.2d 47, 52–54 (3d Cir. 1978). There is apparently no controlling authority in this circuit. In *Torres v. Sachs,* 538 F.2d 10 (2d Cir. 1976), which involved an analogous statute, a panel of this court affirmed an award of attorneys' fees that included compensation for time spent on the fee application. See *Torres v. Sachs,* 69 F.R.D. 343, 348 & n.2 (S.D.N.Y.1975). The panel did so, however, without discussion of the issue.

The question is thus technically open in this court, and we believe there are strong reasons for adopting the approach of the First and Third Circuits. We agree with

---

7. The State also argues that plaintiff cannot be considered the prevailing party because she unsuccessfully asserted her claim that she was wrongfully deprived of work-related expense deductions in a state administrative hearing, and thus she is bound by res judicata. However, the State did not make this argument in the district court and it is precluded from raising this new issue on appeal. See *United States v. Friedland,* 391 F.2d 378, 381–82 (2d Cir. 1968), 441 F.2d 855 (2d Cir.), cert. denied,

404 U.S. 867, 914, 92 S.Ct. 143, 30 L.Ed.2d 111 (1971). In addition, we conclude that this case is not a proper one for application of res judicata, since the State has not established that the identical issues raised in the federal action were litigated in the state administrative proceeding. See *McNellis v. First Federal Savings & Loan Ass'n,* 364 F.2d 251, 257 & n.8 (2d Cir.), cert. denied, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966).

Judge Garth's statement in *Prandini*, supra, that:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. . . . Such a result would not comport with the purpose behind most statutory fee authorizations, *viz*, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

585 F.2d at 53. In a decision upon which *Lund v. Affleck*, supra, relied, the First Circuit pointed out that

> [t]o hold otherwise would permit a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance and automatic appeals.

*Souza v. Southworth*, 564 F.2d 609, 614 (1st Cir. 1977). This observation seems particularly apt in this case, where the State's lawyers on this appeal have devoted the substantial time required to produce over 60 pages of briefs and to make the trip to this court from Hartford, Connecticut, in order to overturn an award of some $3,000. Moreover, the legislative history of the Fees Act impliedly supports this view since the Senate Report cited with approval [8] a district court decision which held that denying attorneys' fees for time spent in obtaining them would "dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees." *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 683–84 (N.D.Cal.1974), aff'd, 550 F.2d 464 (9th Cir. 1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 52, 54 L.Ed.2d 71 (1978).

Oddly enough, the State's briefs in this court largely ignore the issues raised by plaintiff's cross-appeal. The State contents itself with a one-paragraph reference to *Lund v. Affleck*, supra, and a quotation from *King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), that "[w]hat constitutes a reasonable attorney's fee in a particular case shall rest within the sound discretion of the district court." We have no quarrel with that estimable proposition, but the district judge here obviously thought he could not exercise his discretion in evaluating the proper fee for the 58 hours plaintiff's attorneys spent on the fee application. That erroneous view was premised primarily upon two cases where attorneys' fees were based upon the equitable common fund doctrine rather than upon the statutory authorization we have here.[9] Unlike those cases, there is here no potential or actual conflict of interest between counsel seeking attorneys' fees and the persons they represent, since all payments will come from the defendant and will not affect the clients' recovery. See *Prandini v. National Tea Co.*, supra, 585 F.2d at 52–53.[10]

 We therefore hold that the district court erred in its constricted view of its own discretion. The judge should have evaluated the worth of the 58 hours excluded from consideration, since time reasonably spent by plaintiff's attorneys in establishing their fee would be compensable. The exercise of discretion, however, gives the district judge great leeway. If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly. See *Lund v. Affleck*, supra, 587 F.2d at 77. We leave these matters in the first instance to the district court.

---

8. Senate Report at 6, [1976] U.S.Code Cong. & Admin.News at 5913.

9. The district judge cited *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102 (2d Cir. 1977), amended, 575 F.2d 1009 (2d Cir. 1978) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 111 (3d Cir. 1976).

10. *Prandini* also apparently overruled *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700, 705 (E.D.Pa.1977), aff'd, 573 F.2d 1301 (3d Cir. 1978), the other case relied on by Chief Judge Clarie.

Plaintiff's remaining arguments on the cross-appeal require less extended discussion. We do not think it was error for the district court, "in exercising its discretion," to reduce the fee award "to reflect the public contribution of federal funds to the plaintiff's attorneys." 455 F.Supp. at 1349. The court reduced the fee award by 30 percent after finding approximately 30 percent of the Legal Aid Society's funding during the years in which the lawsuit was pending came from Connecticut's program under Title XX of the Social Security Act. Although such a reduction is not mandatory and we do not suggest that it be routinely done, see *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34 (2d Cir. 1978), the issue is committed to the sound discretion of the district court. Cf. *EEOC v. Enterprise Association Steamfitters Local 638,* 542 F.2d 579, 593 & n.13 (2d Cir. 1976), cert. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). Plaintiff argues that the reduction here was an abuse of discretion because under the funding program it receives reimbursement for services to particular clients but no application was submitted in connection with this lawsuit.[11] We conclude that it was not an abuse of discretion for the district court to tie the reduction in the fee to the overall percentage of federal funding received by the Legal Aid Society during the years ·of litigation rather than to the funding for the particular case.

Finally, we think that the district court did not commit error in disallowing one-half of the hours worked because "the issues involved in the case were relatively simple and most attorneys would not have spent so many hours on the case." 455 F.Supp. at 1349. We recognize that our cases require that "in increasing or decreasing an attorney's compensation, the district judge should set forth as specifically as possible the facts that support his conclusion," *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary*

Corp., 487 F.2d 161, 169 (3rd Cir. 1973) quoted in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974). Nevertheless, under the circumstances we conclude that the court's brief explanation satisfies this requirement. We note that the district court did compare the fee in this case with that awarded in at least one other recent case. 455 F.Supp. at 1349.

In conclusion: On the State's appeal, we affirm the judgment of the district court. On the cross-appeal, we remand for further consideration of the question whether the fee award should be increased to compensate plaintiff's attorneys for their efforts in establishing their right to a reasonable fee.

---

11. The Legal Aid Society states that it receives federal reimbursement of the cost of 75 percent of the services it performs for eligible clients, and that it never applied for reimbursement for services to Virginia Gagne and her class because it undertook representation in this matter prior to enactment of Title XX.