UNITED STATES of America, Plaintiff,

and

South End Education Committee et al.,
Intervening Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF WATER-
BURY, CONNECTICUT, et al.,
Defendants-Appellees.

No. 1099, Docket 79–7143.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1979.

Decided Sept. 12, 1979.

Kenneth Kimerling, New York City (M.
L. Taracido, Puerto Rican Legal Defense &
Ed. Fund, Inc., New York City, Bruce Mor-
rison, New Haven Legal Assistance Ass'n,
New Haven, Conn., of counsel), for inter-
vening plaintiffs-appellants.

John F. Phelan, Waterbury, Conn. (Carl
R. Cicchetti, Corp. Counsel, The City of
Waterbury, Waterbury, Conn., of counsel),
for defendants-appellees.

Before MANSFIELD and GURFEIN,
Circuit Judges, and LEVAL, District
Judge.*

MANSFIELD, Circuit Judge:

The South End Education Committee ap-
peals from an order of the District Court
for the District of Connecticut entered by
Judge Thomas F. Murphy on January 2,
1979, denying a request for attorneys' fees
under § 718 of Title VII of the Emergency
School Aid Act (the "Act"), 20 U.S.C.
§ 1617. The court, not having the benefit
of our later decision in *Gagne v. Maher,* 594
F.2d 336, 339–40 (2d Cir. 1979), concluded
that appellants did not come within the
term "prevailing party" as used in that
statute and therefore that it had no discre-
tion to award counsel fees. We hold that
appellants were a prevailing party in some

* Of the United States District Court for the Southern District of New York, sitting by des-
ignation.

respects, and therefore that the district court may, in its discretion, make such an award.

This case grows out of a lawsuit initiated by the Attorney General of the United States in October, 1969, pursuant to § 407 of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6, alleging racial discrimination in the public schools of Waterbury, Connecticut. The government's complaint charged violations of the Fourteenth Amendment and of Title IV of the Civil Rights Act of 1964. In 1973 the defendants entered into a consent decree with the United States enjoining discrimination on the basis of "race, color, religion, or national origin" and ordering the defendants to devise a desegregation plan that would "achieve the greatest amount of desegregation possible, considering the practicalities . . . in such manner that the burden of desegregation does not fall more heavily upon students of one race or national origin than upon students of another race or national origin."

In January, 1974, defendants proposed remedial Plan H, which would close a predominantly Hispanic school known as "Maloney" and call for busing 65% of Waterbury's Hispanic students but only 5% of its white students, thus placing a disproportionate burden on the former. The South End Education Committee, an organization of Puerto Rican parents and community leaders, along with several individuals, was allowed to intervene in May, 1975, for the limited purpose of protecting the interests of the Hispanic community and participating in the development of remedial measures under the consent decree. The government had not objected to Plan H. Intervenors conducted discovery and insisted on a hearing at which, according to the district court, "the intervenors, and not the Government, pulled the laboring oar." In August, 1976, the court granted intervenors' request for an injunction forbidding the implementation of Plan H as violative of the consent decree and ordered the defendants to submit a new plan.

In December, 1976, defendants emerged with two alternative proposals. The first was essentially the same as Plan H, but would simply transfer less of the predominantly Puerto Rican population of Maloney. However, it continued to impose a disproportionate burden on the Puerto Rican community. The second offered no desegregation whatever, but instead a commitment to make some capital improvements at the Maloney school, which would be retained. When intervenors moved to have defendants held in contempt for submitting these clearly inadequate plans, the plans were withdrawn.

In 1976, intervenors also challenged defendants' plans to transfer a bilingual program out of a middle school despite statements by the school's superintendent and teaching staff that this would have a harmful effect on the students. The court granted a temporary restraining order and a preliminary injunction, finding that the proposal constituted a violation of the consent decree.

The court appointed a special master in January, 1977, to review all plans. A month later the government submitted the "Buford Plan," which would close Barnard school, a predominantly white school; nonminority students would be transferred to Maloney and minority students to Duggan school, another predominantly white school. Intervenors supported this plan with certain provisos because it would not only keep open the Maloney school but distribute the burden of desegregation in a less disproportionate manner.

Also in February, 1977, defendants submitted a "freedom of choice" plan. The special master allowed testing of the defendants' "freedom of choice" plan by preregistration. When the plan proved a failure defendants submitted Plan Z, proposing to bus 25 children from Maloney and 75 children from Barnard and to redraw lines between Barnard and Duggan. Plan Z was rejected by the court.

In April, the Barnard school P.T.A. filed three suggested plans which would avoid closing their school (unlike the Buford Plan). Their Plan C would instead close Duggan. The court approved Amicus Plan C. We affirmed on appeal, *United States v. Board of Education of Waterbury, Connecticut,* 560 F.2d 1103 (2d Cir. 1977), finding that the plan "would effect desegregation without disproportionately burdening any racial group."

Intervenors then filed a motion for attorneys' fees and costs, both under § 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617, and under common law for successfully coercing compliance with the consent order and their efforts against the alleged bad faith and obstinacy of defendants. The district court ruled only on the statutory claim, denying the motion on the ground that although all other requirements of § 718 had been met, intervenors were not a "prevailing party" because they had not prevailed on the "merits" of the lawsuit. From this order intervenors appeal.

## DISCUSSION

At issue is whether intervenors are eligible for an award of attorneys' fees under § 718 of the Act, 20 U.S.C. § 1617, which provides

"Upon the entry of a final order by a court of the United States against a local educational agency, . . . for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

This provision is the product of what we have termed a consistent program of "fee shifting under the civil rights acts." *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 36 n.2 (1978). Every major civil rights statute enacted by Congress since 1964 has included, or has been amended to include, fee shifting provisions. S.Rep.No.1011, 94th Cong., 2d Sess. 3 (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, p. 5908.

The rationale for the award of attorneys' fees to those who act as private attorneys general in civil rights cases is to aid the vindication of our national policy against discrimination. Congress was well aware that the government lacked the resources to ensure broad compliance with the laws, and therefore sought to facilitate supplementary enforcement by those injured by illegal discrimination. *Northcross v. Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

The district court properly ruled that its order approving Amicus Plan C, affirmed by this court on appeal, was a "final order," as was the 1973 consent decree. Moreover, the court was well within its discretion in finding that the proceedings were "necessary to bring about compliance" with the law.

The government's allegation of a Fourteenth Amendment violation brought the lawsuit within the terms of § 718, for the consent order operates as a litigated finding of unconstitutional segregation. *United States v. Board of Education of Waterbury, Connecticut, supra,* 560 F.2d at 1104. That the consent decree made it unnecessary for the court to rule on whether the constitutional claim was meritorious is of no significance for present purposes. Were such a finding a condition for the award of attorneys' fees, parties would be provided an incentive to spurn reasonable settlements and press on through final judgment. This

is contrary both to the intent of Congress, see, e. g., 117 Cong.Rec. 11341 (1971) (remarks of Sen. Cook), and to public policy. See *Gagne v. Maher*, 594 F.2d 336, 340 (2d Cir. 1979); *Aspira of New York Inc. v. Board of Education of the City of New York*, 65 F.R.D. 541, 542–43 (S.D.N.Y.1975).

In concluding that intervenors were not a "prevailing party" the district court rested its decision on the grounds that they were not a party when the consent decree was entered, that "in no area of the merits of the lawsuit did [they] prevail or succeed," and that while they were instrumental in opposing defendants' plans, the plan ultimately adopted was not theirs.

An intervenor is certainly a *party*. See 3B Moore's Federal Practice ¶ 24.02, at 24–31; *Keyes v. School District No. 1*, 439 F.Supp. 393, 399–400 (D.Colo.1977). The very purpose of intervention, whether of right or permissive, is to enable those satisfying the requirements of Rule 24 to assert their interests in all pending aspects of the lawsuit, within the limitations of purpose imposed at the time of intervention. See *Park & Tilford v. Schulte*, 160 F.2d 984, 989 n.1 (2d Cir.), *cert. denied*, 322 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347 (1947); *In re Raabe, Glissman & Co.*, 71 F.Supp. 678 (S.D.N.Y. 1947).

With respect to appellants' failure to show that they succeeded on the merits we have, since the district court's decision in this case, construed virtually identical language in the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, to mean that "once it has been determined that plaintiff obtained benefits for the class in the settlement on some claim, plaintiff is 'the prevailing party' within the meaning of the statute." *Gagne v. Maher, supra*, 594 F.2d at 340. A similar test applied by other courts is whether the party seeking a fee award has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d 275,

278–79 (1st Cir. 1978). See also *Hughes v. Repko*, 578 F.2d 483, 486–87 (3d Cir. 1978). The Senate Report accompanying that act stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." Sen.Rep.No.1011, 94th Cong., 2d Sess. 5 (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, p. 5912. A party need not succeed on every issue, nor must it obtain a formal judgment in its favor. We see no reason to construe the language of § 718 differently. See *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 621 (4th Cir. 1978).

The complex nature of school desegregation cases requires that attorneys' fees be approached with flexibility, if Congress' goal in enacting these statutes is to be realized. The cases commonly "involve relief of an injunctive nature that must prove its efficacy only over a period of time and often with frequent modifications . . ." *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 722–23, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Establishment of liability is but the first step. The precise remedy does not follow logically from the determination of liability, but rather reflects a careful reconciliation of the interests of the many affected members of the community and a choice among a wide range of possibilities. "The nature of the litigation does not lend itself to complete success by one side or the other." *Keyes v. School District No. 1, supra*, 439 F.Supp. at 400. It is through the input of interested parties, such as the intervenors and the amici curiae in this case, that a just remedy may be devised.

Were we to interpret "prevailing party" as meaning only the party which established the liability of the defendants, or the party which proposed the plan ultimately adopted, we would severely limit the availability of attorneys' fees to parties whose participation contributed importantly to the creation of remedies in these cases. We

would discourage activity essential to the realization of the congressional purpose of combating discrimination. Moreover, such a holding would encourage each party on the plaintiff's side to cling obstinately to the precise terms of its own proposal with a view to having the proposal approved verbatim in order to claim entitlement as the "prevailing party" to attorneys' fees, when compromise or concession could achieve settlement at no cost to the party's legitimate interests. We do not believe that Congress intended such a result. See, in accord, *Aspira of New York, Inc. v. Board of Education of the City of New York, supra*, where the court concluded that plaintiffs were the prevailing party because they achieved their objectives in a negotiated consent order, the court noting that regardless of who deserved credit for devising the remedy, it "would never have come into being . . . without the insistent demands, pressures, and constructive contributions of the plaintiffs." 65 F.R.D. at 543; also *Keyes v. School District No. 1, supra*, where attorneys' fees were awarded to the plaintiffs and intervenors in a school desegregation suit, even though their desegregation plans were not accepted entirely.

Intervenors entered this lawsuit to oppose a plan which unfairly burdened their constituency, and which was not being opposed by the government. In this they succeeded. They contested several later proposals, and worked in support of a plan which better served their valid interests. The remedy ultimately adopted bore a substantial resemblance to the plan intervenors supported (indeed, it took the same general approach): each plan closed a predominantly white school, sending its white students to a largely Hispanic school and its minority students to a different predominantly white school. In light of the success of intervenors in these respects, we conclude that they come within the meaning of the term "prevailing party."

The statute leaves in the district court's hands full discretion to determine the extent to which a party's participation contributed to the resolution of the case and to adjust the fee award accordingly. See, e. g., *Keyes v. School District No. 1, supra.*

We therefore remand the case to the district court for a determination of the appropriate fee award under § 718. Our decision does not preclude the district court from determining, if it considers resolution of the issue to be necessary or appropriate, whether a fee may also be awarded on common law principles against the defendants, in view of the charges of bad faith which to some extent are corroborated by their filing of a misleading and unenlightening brief in this court. *Stolberg v. Members of the Board of Trustees for the State College of Connecticut*, 474 F.2d 485, 490 (2d Cir. 1973).