611 F.2d 1302
 Hanako DENNIS, Arthur Schmidt, Clyde C. Teixeira,
Individually and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
v.
Andrew CHANG, in his capacity as Director, Department of
Social Services and Housing, State of Hawaii, and
Department of Social Services and
Housing, State of Hawaii,
Defendants-Appellants.
Mary PEREZ, Penelope Torres, Sharleen Lee and Danielle Von
Hiram, Individually and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
v.
Andrew CHANG, in his capacity as Director, Department of
Social Services and Housing, State of Hawaii, and
Department of Social Services and
Housing, State of Hawaii,
Defendants-Appellants.
Marjorie A. LYNCH and Roxanne Montalvo, Individually and on
behalf of all persons similarly situated,
Plaintiffs-Appellees,
v.
Andrew CHANG, in his capacity as Director, Department of
Social Services and Housing, State of Hawaii, and
Department of Social Services and
Housing, State of Hawaii,
Defendants-Appellants.
Claudia FORTUCCI, Individually and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
v.
Andrew CHANG, in his capacity as Director, Department of
Social Services and Housing, State of Hawaii, and
Department of Social Services and
Housing, State of Hawaii,
Defendants-Appellants.
 Nos. 77-4019, 78-1336, 78-2751, 78-1337 and 78-1338.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 21, 1980.
 
 Charleen M. Aina, Honolulu, Hawaii (argued), Ronald Y. Amemiya, Honolulu, Hawaii, on brief, for defendants-appellants.
 Norman K. K. Lau, Honolulu, Hawaii, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before BROWNING, CHOY and HUG, Circuit Judges.
 BROWNING, Circuit Judge:
 
 
 1
 Officials of Hawaii's Department of Social Services and Housing challenge the attorneys' fee awards made to prevailing plaintiffs in four section 1983 class actions alleging equal protection and statutory violations in the administration of Hawaii's Medicaid and AFDC programs.[1] Plaintiffs in all four cases were represented by the Legal Aid Society of Hawaii (LASH), a non-profit public interest corporation partially funded by the State of Hawaii. The fee awards were made pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[2] We conclude that appellants' objections to the awards are without merit.
 
 I.
 
 2
 Appellants' contention that the Eleventh Amendment prohibits awards of attorneys' fees against state officials acting in their official capacities has been rejected by the Supreme Court in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The Court stated:
 
 
 3
 Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment. When it passed (section 1988), Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities. Id. at 693-94, 98 S.Ct. at 2575.
 
 
 4
 Section 1988 applies to " 'all cases pending on the date of enactment' ". Id. at 695 n.23, 98 S.Ct. at 2576 n.23 Quoting H.R.Rep. No. 94-1558, 94th Cong., 2d Sess., at 4 n.6 (1976). Since these four cases fall in that category, the awards are not barred by the Eleventh Amendment.[3]
 
 II.
 
 5
 While appellants concede the awards are not barred merely because appellees' counsel is a legal services organization providing free legal representation,[4] they argue that attorneys' fees should not have been awarded in these cases because of the source of LASH's funding and the nature of LASH's program commitment.
 
 
 6
 As to the source of LASH's funding, appellants point out that the State of Hawaii supports LASH through direct annual appropriations,[5] and argue that the "double payment" LASH would receive from an award of attorneys' fees constitutes a "special circumstance" that would render the fee awards unjust. See S.Rep. No. 94-1011, 94th Cong., 2d Sess., at 4 (1976), U.S.Code Cong. & Admin.News, p. 5909, Quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). They argue further that even if some fee award were appropriate, the district court abused its discretion by not reducing the amount awarded to reflect the proportion of state funding received by LASH, Citing Gagne v. Maher, 594 F.2d 336, 345 (2d Cir. 1979), Cert. granted, --- U.S. ----, 100 S.Ct. 44, 62 L.Ed.2d 30 (No. 78-1888, Oct. 2, 1979).
 
 
 7
 As to the nature of LASH's program commitment, appellants point out that LASH is a legal aid organization dedicated to providing free legal services to the poor and that LASH has voluntarily adopted a program giving priority to civil rights litigation. They argue that since LASH has already voluntarily done what an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act was intended to encourage, a further award under the Act would be unnecessary and would not serve the purposes of the Act.
 
 
 8
 The state's arguments are not supported by the language, the legislative history, or the purposes of the Act.
 
 
 9
 The language of section 1988, Title 42, is broad and unequivocal. "In Any action or proceeding to enforce" section 1983, "the court, in its discretion, may allow The prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis added). While the discretion vested in the court may allow denial of an award because of circumstances peculiar to a particular case, the statutory language hardly permits the denial of an award in every suit brought against the state by a legal services organization that furnishes its services without cost, expresses a commitment to the enforcement of civil rights, and is funded by the state.
 
 
 10
 Congress was aware that these characteristics are common to legal services organizations. Congress knew that state agencies and officials would be among the civil rights defendants against whom attorneys' fees could be awarded under the Act.[6] Congress knew that civil rights plaintiffs are often represented by legal services organizations, and cited with approval a case in which plaintiff was represented by a legal services organization that was publicly funded.[7] Moreover, Congress was surely aware that one source of such public funding was the states.[8] Yet in outlining the factors to be considered in calculating attorneys' fees, Congress made no reference, directly or by implication, to the nature or source of plaintiffs' counsel's funding.[9]
 
 
 11
 Most persuasive, appellants' interpretation of the statute would run counter to the statutory purpose. As appellants correctly state, Congress' purpose in authorizing fee awards was to encourage compliance with and enforcement of the civil rights laws.[10] The Fees Awards Act must be liberally construed to achieve these ends.[11] "In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws." S.Rep. No. 94-1011, Supra at 3, U.S.Code Cong. & Admin.News 1976, p. 5910.
 
 
 12
 As noted at the outset, appellants concede that attorneys' fees may be awarded under the Fees Awards Act even though plaintiffs have been represented without charge by a legal services organization. An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes. These same considerations support an award of attorneys' fees when the legal services organization is funded by the state and the state is the defendant.[12]
 
 
 13
 Even when funded by the state, legal services organizations operate on limited budgets and must allocate their resources among competing projects. Fee awards in civil rights cases encourage legal services organizations to pursue such litigation because the awards permit replenishment of the funds available for the organization's work. While LASH has a present program commitment to civil rights litigation, that commitment is not immutable. Continuation of the commitment is made more attractive by the prospect of recouping resources devoted to such suits. Moreover, attorneys' fees awards will allow LASH to expand its efforts to enforce civil rights statutes in accordance with its commitment.[13] By contrast, interpreting the Act to allow denial of attorneys' fees in suits against state officials would make such suits less attractive, a consequence inconsistent with Congressional recognition that the state is often the necessary target if civil rights are to be protected. See note 6.
 
 
 14
 The possibility that a state's potential liability for attorneys' fees may encourage it to achieve greater compliance with the civil rights laws is not diminished because the state has funded the legal services organization representing plaintiff. By contrast, if the state were led to expect a reduction in its obligations because it had contributed funds to plaintiffs' counsel, the deterrent effect of a potential fee award would be undermined. Similarly, while potential liability for attorneys' fees may encourage a state defendant to settle civil rights litigation that has been brought against it, if the state could immunize itself against a fee award by contributing to the financing of plaintiffs' counsel the state would have less incentive to settle pending litigation and more incentive to resist civil rights compliance by defending against the suit until trial.
 
 
 15
 These considerations would apply if the legal services organization involved were financed entirely by state appropriations. They apply with greater force where, as here, the state's funding is only partial. See note 5. If the state would wholly escape its obligation to pay attorneys' fees by partially funding plaintiff's attorney, an obvious loophole would be created in the Fee Awards Act. Nor is there any logical basis for reducing the award Pro tanto. Every consideration of statutory language, legislative history, and Congressional purpose supports a full award of attorneys' fees, undiminished by the state's contribution to the financing of plaintiff's counsel through legislative appropriations independent of the litigation.[14]
 
 
 16
 The remaining argument is that "double payment" is somehow "unfair." Since awards of attorneys' fees to state funded legal services organizations in civil rights litigation against the state are encompassed within the statutory language of the Fee Awards Act, were in all probability contemplated by Congress, and serve the purposes for which the Act was adopted, the question of fairness has been resolved by Congress. The result sought by the state cannot reasonably be reached through interpretation of the federal statute. If the state wishes to confine its financial contribution to civil rights enforcement to the amount appropriated by the state for that purpose, without enhancement through attorneys' fees awards, that result must be accomplished by other means.[15]
 
 III.
 
 17
 Appellants argue that LASH was barred from seeking or receiving attorneys' fees because the administrative guidelines issued under the Legal Services Corporation Act prohibit recipient organizations from accepting "fee- generating" cases. See 42 U.S.C. § 2996f(b)(1).[16] Other courts have rejected essentially the same argument.[17] We do not reach the merits.
 
 
 18
 Appellants have failed to exhaust the administrative procedures established for enforcing the "fee-generating" guidelines. See 45 C.F.R., part 1618. These administrative enforcement procedures were established
 
 
 19
 to insure uniform and consistent interpretation and application of the Act, and to prevent a question of whether the Act has been violated from becoming an ancillary issue in any case undertaken by a recipient. . . . 45 C.F.R. § 1618.1.
 
 
 20
 Appellants' argument is ancillary to the underlying proceedings, and is presented without the benefit of either an adequate record or the agency's construction of the statute or of its own regulations. We decline to consider it.
 
 IV.
 
 21
 Appellants challenge the amount of the fee award in Lynch on a variety of grounds. The district court awarded plaintiff in Lynch $10,139 in attorneys' fees for 156 hours of work. The award was explicitly based on three findings: counsel had demonstrated skill and experience in civil rights litigation both in Lynch and in earlier cases; the rates of compensation sought were typical of those earned by experienced Honolulu attorneys; and although "hindsight might suggest that fewer hours were needed," the time actually spent was reasonable and reflected good legal judgment, particularly because plaintiffs "were never assured of early success." These findings support the award and are in turn supported by the affidavits submitted by plaintiff. Appellants' objections to the award are without merit.
 
 
 22
 Appellants argue that the data furnished in support of the award in Lynch were not sufficiently detailed to enable the court to evaluate the factors that must be considered in determining "reasonable" attorneys fees. Four affidavits were offered by the attorneys who worked on the case. Three of the affiants described their extensive experience in litigation similar to Lynch ; the fee for the fourth was calculated by the court at a lower hourly rate. Each affiant itemized the number of hours he or she expended on the case with a short description of each task performed and the time taken to perform it. Appellants object because the dates are not specified, but the listing is chronological, and sufficiently detailed to enable the court to understand precisely what was claimed, particularly in light of the court's intimate knowledge of the proceedings in the case. Appellants point out that more detailed time sheets were available and were submitted with appellants' motion for reconsideration, but were rejected by the court because they did not constitute "newly discovered evidence." This ruling did not affect the result. Contradictions said to be disclosed by the time sheets had already been urged upon the court. In any event, since the time sheets reflected more time than was actually claimed, no prejudice to appellants appears. Nor can we accept appellants' argument that the court may not have considered the possibility of unnecessary duplication of effort by plaintiffs' attorneys. This same argument was clearly made to the court, and in announcing the award the court said it had considered all factors relevant under standard authorities,[18] which include possible duplication of effort.
 
 
 23
 Six affidavits of other counsel were offered regarding the customary billing rate for attorneys in the community. In addition, the court was furnished copies of court orders granting attorneys' fees in Fortucci, Perez, Dennis, and a fourth case not the subject of this appeal. These affidavits were sufficient to permit the court to determine a reasonable rate for attorneys of comparable experience in cases of comparable complexity.
 
 
 24
 We have already rejected appellants' contention that the award should have been reduced because counsel were partly financed by the state. Appellants' suggestion that fees awarded to legal services organizations should be less than those customarily paid private counsel in civil rights cases is also untenable.[19]
 
 V.
 
 25
 In each of the four cases the district court ordered attorneys' fees awarded to "plaintiffs." Although consistent with the statutory language authorizing a fee award to the "prevailing party," to avoid a windfall the award should be made to the organization that provided the legal services.[20] We are informed that the retainer agreements between LASH and its clients included a clause entitling LASH to any attorneys' fees that might be awarded, and that the award was in fact paid directly to LASH despite the form of the court order. With that understanding, the awards are
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 In Dennis v. Chang, No. 77-4019, plaintiffs alleged that defendants failed to process Medicaid applications within the federally-imposed time limit of 45 days. See 42 U.S.C. § 1396a(a)(8); 45 C.F.R. § 206.10(a)(3)(i). In Perez v. Chang, No. 78-1336, plaintiffs alleged that defendants failed to deduct costs incurred in earning income when computing plaintiffs' AFDC payments. See 42 U.S.C. § 602(a)(7); 45 C.F.R. § 233.20(a)(6)(iv), (7)(i). In Fortucci v. Chang, plaintiffs alleged that defendants violated regulations requiring hearings and final administrative action within 90 days of an AFDC benefit application. See 42 U.S.C. § 602(a)(4); 45 C.F.R. § 205.10(a)(16). In Lynch v. Chang, No. 78-2751, plaintiffs alleged that defendants failed to provide "income disregards" to AFDC participants who assigned their child support rights to defendants. See 42 U.S.C. § 602(a)(28)
 
 
 [2]
 This statute provides in pertinent part:
 ". . . In any action or proceeding to enforce a provision of section . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 
 
 [3]
 See Sethy v. Alameda County Water District, 602 F.2d 894, 897 (9th Cir. 1979); Stanford Daily v. Zurcher, 550 F.2d 464, 465-66 (9th Cir. 1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)
 
 
 [4]
 An award of attorneys' fees under the Fees Awards Act is not to be denied because counsel provided its legal representation without charge. See Rodriguez v. Taylor, 569 F.2d 1231, 1245 (3d Cir. 1977); See also Hairston v. R & R Apartments, 510 F.2d 1090, 1092-93 (7th Cir. 1975); Incarcerated Men of Allen County Jail v. Fair, 507 F.2d 281, 286 (6th Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885, 889 (9th Cir. 1974) (cases decided prior to enactment of statute). Moreover, attorneys' fees may be awarded under the Act even where plaintiffs' counsel is publicly funded and defendant is an agency or official of the state. Holley v. Lavine, 605 F.2d 638, 646 (2d Cir. 1979); Weisenberger v. Huecker, 593 F.2d 49, 54 (6th Cir. 1979); Lund v. Affleck, 587 F.2d 75, 76 (1st Cir. 1978); Perez v. Bou, 575 F.2d 21, 24 (1st Cir. 1978). See generally Note, Awards of Attorney's Fees to Legal Aid Offices, 87 Harv.L.Rev. 411 (1973)
 
 
 [5]
 These lawsuits were commenced between April 1975 and May 1977. It appears that the State of Hawaii provided approximately 60% Of LASH's funding in fiscal year 1977 and 50% In fiscal year 1978
 
 
 [6]
 See, e. g., S.Rep. No. 94-1011, Supra, at 5; H.R.Rep. No. 94-1558, Supra, at 7; Hutto v. Finney, supra, 437 U.S. at 693-94, 98 S.Ct. 2565
 
 
 [7]
 See H.R.Rep. No. 94-1558, Supra, at 8 n.16, Citing Incarcerated Men of Allen County Jail, supra, 507 F.2d 281. Since the beginning of its involvement in the funding of legal services, Congress has made it clear that legal service organizations, which often bring suit against state officials, are entitled to attorneys' fees on the same basis as private counsel. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 262-63 n.36, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Rodriguez, supra, 569 F.2d at 1245; 45 C.F.R. § 1609.5
 
 
 [8]
 For example, the Legal Services Corporation Act refers to the use of "(n) on-Federal funds received by the Corporation and funds received by any recipient from a source other than the Corporation . . . ." 42 U.S.C. § 2996i(c). The implementing regulations provide that "(a) recipient may receive public . . . funds and use them in accordance with the purposes for which they were provided," 45 C.F.R. § 1610.3, and defines public funds to include "funds received from a . . . State . . . government. . . ." 45 C.F.R. § 1600.1
 
 
 [9]
 See H.R.Rep. No. 94-1588, Supra, at 8-9; S.Rep. No. 94-1011, Supra, at 6, Citing Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974); Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974); Davis v. County of Los Angeles, 8 E.P.D. P 9444 (C.D.Cal.1974); Swann v. Charlotte-Mecklenburg Board of Education, 66 F.R.D. 483 (W.D.N.C.1975). See also Lund v. Affleck, 442 F.Supp. 1109, 1114-15 (D.R.I.1977), Aff'd, 587 F.2d 75 (1st Cir. 1978)
 
 
 [10]
 See S.Rep. No. 94-1011, Supra, at 5, U.S.Code Cong. & Admin.News, p. 5913
 " . . . (T)he Committee has found that fee awards are essential if the Federal statutes to which (section 1988) applies are to be fully enforced. We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance."
 See Rodriguez, supra 569 F.2d at 1245; Hairston, supra, 510 F.2d at 1092; Incarcerated Men of Allen County Jail, supra, 507 F.2d at 286. See also Brandenburger, supra, 494 F.2d at 889.
 
 
 [11]
 Mid-Hudson Legal Service, Inc. v. G. & U., Inc., 578 F.2d 34, 37 (2d Cir. 1978)
 
 
 [12]
 As stated in Rodriguez v. Taylor, 569 F.2d at 1245:
 . . . The award of fees to legal aid offices and other groups furnishing Pro bono publico representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights. Moreover, assessing fees against defendants in all circumstances may deter wrongdoing in the first place. (citations omitted.)
 See also Note, Supra, 87 Harv.L.Rev. at 413-20, and such pre-statutory cases as Hairston, Incarcerated Men of Allen County Jail, and Brandenburger, cited in note 4.
 
 
 [13]
 Cf. Equal Emp. Op. Comm'n v. Enterprise Ass'n Steamfitters, 542 F.2d 579, 593 (2d Cir. 1976)
 
 
 [14]
 Gagne v. Maher, supra, 594 F.2d 336, appears to be to the contrary. The court sustained a reduction of the fee award by 30% After finding that the state provided about 30% Of the funding for the legal aid organization representing plaintiff. The court stated: "Although such a reduction is not mandatory and we do not suggest that it be routinely done, . . . the issue is committed to the sound discretion of the district court." Id. at 345 (citation omitted). The court did not suggest any standards drawn from the language or purpose of the Fee Awards Act that might govern the exercise of discretion by the district court to reduce a fee award Pro tanto, nor did the court indicate how the case before it differed from the generality of cases in which a reduction of the fee award was not to be "routinely done"
 
 
 [15]
 In 1978, partly in response to the instant cases, the Hawaii legislature included the following provision in the statute appropriating funds for LASH:
 "SECTION 30A. Provided, that the sum appropriated in the GOV 860 Program for the Legal Aid Society of Hawaii shall be the maximum amount of State funds which shall be used to support the operations of the Legal Aid Society of Hawaii, and that Any awards of attorney's fees collected by the Legal Aid Society of Hawaii from any State agency or officer during fiscal year 1978-79 which would cause the amount of State funds to exceed the amount appropriated shall be set-off against the sum appropriated to the Legal Aid Society of Hawaii."
 1978 Haw.Stats. (H.B. 3039-78 § 30A) (emphasis added).
 
 
 [16]
 This section states:
 "No funds made available by the Corporation . . . may be used (1) to provide legal assistance (except in accordance with guidelines promulgated by the Corporation) with respect to any fee-generating case (which guidelines shall not preclude the provision of legal assistance in cases in which a client seeks only statutory benefits and appropriate private representation is not available) . . ."
 
 
 [17]
 See Rodriguez, supra, 569 F.2d at 1246 & n.25; Townsend v. Edelman, 518 F.2d 116, 123 & n.16 (7th Cir. 1975)
 
 
 [18]
 The court referred specifically to King v. Greenblatt, 560 F.2d 1024, 1026-27 (1st Cir. 1977), Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), and Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)
 
 
 [19]
 See Perez, supra, 575 F.2d at 24, Quoting Reynolds v. Coomey, 567 F.2d 1166, 1167 (1st Cir. 1978)
 
 
 [20]
 Brandenburger, supra, 494 F.2d at 889; Hairston, supra, 510 F.2d at 1093